GIL T. BUFORD *v.* LOUISVILLE & N. R. Co.*

(*Nashville.* December Term, 1921.)

1. **RAILROADS.** Finding of killing of animal on unfenced track sufficient to support recovery.

In an action against a railroad company for the death of a mule, findings of fact that the animal entered on defendant's unfenced tracks from plaintiff's premises by reason of the defective condition of the fence, and was killed by defendant's moving train in such a way as to make defendant liable, *held*, sufficient to support a judgment for plaintiff. (*Post, pp.* 265-267.)

2. **RAILROADS.** Proof of killing of stock on unfenced track prima-facie case.

It is sufficient to make a *prima-facie* case of liability under the statute to show that stock was killed by a moving train on an unfenced track, and such showing places on the railroad company the burden of proving a defense. (*Post, pp.* 265-267.)

3. **RAILROADS.** Landowner's contract to repair fence held not without consideration.

A contract by a landowner to keep a railroad fence in repair, the railroad company to furnish the material on notice from the owner, who agrees to release the company from all claims for damages to stock straying on the track, is not invalid for want of consideration; the statute not imposing an absolute duty on the company to fence its tracks, but merely making it liable for the value of stock injured by trains if the track is not fenced. (*Post, pp.* 267, 268.)

Cases cited and approved: Hinton v. Insurance Co., 110 Tenn. 130; Martin v. McCrary, 115 Tenn., 316; Railroad Co. v. Stonecipher, 95 Tenn., 311; Railroad v. Hughes, 94 Tenn., 451; Railroad v. Russell, 92 Tenn., 108.

---

*On constitutionality of statute requiring railroad company to fence tracks and build cattle guards, see note in 31 L. R. A. (N. S.) 861.

4. **RAILROADS.** Landowner's contract to repair fence valid.

A landowner's contract with a railroad company to keep a fence along its right of way in repair from materials to be furnished by the railroad on notice of defects, and to release the company from liability for damages to stock is not contrary to public policy, expressed in the fencing statute which does not impose an ab solute duty to fence, but merely makes the company liable for injury to stock, and the owner cannot recover the value of stock killed as a result of his failure to give notice of defects. (*Post, p.* 268.)

5. **CERTIORARI.** Merely denied by supreme court, though plaintiff not entitled to recover, where defendant did not complain of remand.

Where defendant did not complain of the action of the court of civil appeals in remanding a cause for a new trial, on reversing a judgment for plaintiff, the latter's petition for *certiorari* will merely be denied, though he was not entitled to recover. (*Post, p.* 268-271.)

Cases cited and approved: Railroad v. Crider, 91 Tenn., 507; Railroad v. Webster, 106 Tenn., 586; Terre Haute, etc. R. Co. v. Smith, 16 Ind., 102; Warren v. K. & D. M. R. Co., 41 Iowa, 484; Ells v. Pacific R. Co., 48 Mo., 231; Talmadge v. Rensselaer, etc., R. Co., 13 Barb. (N. Y.), 493; Illinois Cent. R. Co. v. Swearingen, 33 Ill., 289; Enright v. San Francisco, etc., R. Co., 33 Cal., 230; Whittier v. Chicago, etc., R. Co., 24 Minn., 394; Ells v. Pacific R. Co., 48 Mo., 221; Indianapolis, etc., R. Co. v. Petty, 25 Ind., 413; Clayton v. Great Western R. Co., 23 U. C. C. P., 137; Kilmer v. G. W. R. Co., 35 U. C. Q. B., 595; Duffy v. N. Y., etc., R. Co., 2 Hilt., 496.

Case cited and distinguished: New Albany, etc., R. Co. v. Maiden, 12 Ind., 10.

---

## FROM GILES.

---

Appeal from the Circuit Court of Giles County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. W. B. TURNER, Judge.

ESLICK & ESLICK, for plaintiff.

J. D. WOODWARD, for defendant.

MR. L. D. SMITH, Special Justice, delivered the opinion of the Court.

Gill T. Buford commenced this action before a justice of the peace, and therein sought to recover from the Louisville & Nashville Railroad Company damages for the unlawful killing of a mule. He recovered before the justice of the peace, and the railroad company appealed to the circuit court. In that court the case was tried before the judge without the intervention of a jury, and judgment was rendered in favor of the plaintiff. The railroad company prosecuted an appeal in error to the court of civil appeals. The latter court reversed the judgment of the circuit court and remanded the cause for a new trial, holding that the finding of facts of the circuit judge, which constituted the record, there being no bill of exceptions setting forth the evidence upon which the trial judge acted, was insufficient to form the basis of a judgment.

The case is before us for review upon the petition for *certiorari* of the plaintiff only.

The finding of facts by the trial court shows that the plaintiff's mule entered upon the unfenced tracks of the railroad company from his premises by reason of the fence which the railroad company had constructed in the year 1907 becoming defective and insufficient, and that it was struck by one of the moving trains of the railroad company and killed thereby. In the finding of the trial judge he used the following language:

"It [the mule] was killed by being struck by one of the defendant's moving trains in such a way as to make the defendant liable therefor."

The court of civil appeals was of the opinion that, inasmuch as the findings of the circuit judge did not disclose the circumstances under which plaintiff's mule was killed, saying, without more, that "the mule was killed under such circumstances as to render the defendant liable," the finding was but a conclusion of law, and therefore no judgment could be pronounced one way or the other, citing *Hinton* v. *Insurance Co.,* 110 Tenn., 130, 72 S. W., 118, and *Martin* v. *McCrary,* 115 Tenn., 316, 89 S. W., 324, 1 L. R. A. (N. S.), 530.

While, of course, the findings of fact of the trial judge must state ultimate facts, and that no judgment can be predicated upon conclusions of law, we are of opinion that sufficient facts are found upon which to predicate a judgment. The facts necessary to form the basis of a judgment are found, to wit: That the mule was killed by a moving train on the unfenced track of the railroad company. It is quite true that it is not accurate to say that railroad companies are absolutely liable for killing or injuring live stock by moving trains on tracks not inclosed by a lawful fence, since there are, under the statutes, conditions under which such absolute liability does not exist; yet, in an action to recover damages from a railroad company for stock killed by a moving train on its unfenced track, it is sufficient to show that the stock was killed by a moving train on an unfenced track. This makes a *prima-facie* case of liability and places upon the railroad company the burden of making out such defenses as will enable it to escape liability. *Railroad Co.* v. *Stonecipher,* 95 Tenn.,

311, 32 S. W., 208; *Railroad* v. *Hughes,* 94 Tenn., 451, 29 S. W., 723; *Railroad* v. *Russell,* 92 Tenn., 108, 20 S. W., 784.

In this case the railroad company defended upon the ground that its track passing through the lands of the plaintiff had been originally fenced by it under a contract with the plaintiff by which he was to maintain and keep it in repair, the railroad company to furnish the material upon notice from the plaintiff to do so, and by the terms of which the plaintiff released the railroad company for all claims for damages by reason of his stock straying upon the railroad and being there killed or injured after the fence was erected. The railroad company being *prima-facie* liable under the statute for the value of the mule by reason of the fact that it was killed by a moving train on its unfenced track, the court of civil appeals should have determined the question of whether or not the facts found in reference to the contract were sufficient to make out a complete defense.

The finding of facts by the trial court shows that on the 20th day of August, 1907, plaintiff, Buford, and the defendant, railroad company, entered into a written contract by the terms of which the railroad company was to furnish on the ground along the railroad the necessary material and to build a fence at its own cost and expense through the lands of the plaintiff; that repairs to the fence as they appeared to be needed should be made by the railroad company furnishing the wire, staples, and posts on the ground, and Buford receiving the material and doing the work of such repairs, the said Buford to give due notice to the railroad company to furnish the material; that the fence should be perpetually maintained under the condi-

tions and provisions mentioned. The contract then provides:

"And the first party agrees to and does hereby release the said second party from all claims for damages by reason of the stock or cattle of the said first party or any stock or cattle in his charge straying upon the railroad and being there killed or injured after said fence has been erected."

It was further found that the fence was constructed as provided for in the contract, and that it continued to stand, but gradually deteriorated until, before the killing of plaintiff's mule April 29, 1914, it had become so defective as to be insufficient to prevent stock passing through, and that the mule entered upon the railroad from the plaintiff's adjacent land through one of the defective places in the fence. The trial judge further found that the plaintiff at no time notified the defendant railroad company of the defective condition of the fence, and that the railroad company did not furnish any material with which to repair it, and that no request was made by the plaintiff for the same.

It is argued by the plaintiff that this contract is invalid and not binding because without consideration. This argument proceeds upon the idea that the statute makes it the duty of the railroad company to fence its tracks, and thus to afford to the plaintiff all of the protection which he obtained by the contract, and that the railroad company parted with nothing of value as an inducement to the obligations assumed by him in the contract. The statute does not impose the absolute duty upon railroad companies of fencing their tracks; it merely makes them liable for the value of stock killed by its moving trains if the track is not fenced. Payment of damages to the owner of the

stock does not constitute all the advantages to the land-owner in having the tracks of the railroad which runs through his premises fenced. Obviously he may deem it to his advantage to have means provided for preventing the killing and injuring of his stock rather than to be afforded merely a remedy to recover its value when so injured or killed. He may deem a fence of great advantage to him in having his land separated from that of the railroad company, thereby enabling him to utilize his land for purposes which it could not be utilized for, if unfenced, and therefore, since he cannot compel the railroad company to fence its tracks, there is ample consideration for an agreement of this sort by which a landowner obligates himself to maintain a partition fence and keep it in proper repair, and it cannot be said that his obligation to release the railroad company from damages resulting from his failure to keep the fence in repair is without consideration.

It is argued further that the contract is illegal because contrary to public policy. The constitutionality of the railroad fencing statute and the power of the legislature to enact such legislation has been upheld by this court, as being within the police power of the State, in view of its purpose, not merely to provide a means of more speedy collection of live stock claims, but for the prevention of accidents on railways, the liability for failure to do so being imposed not so much in the interest of the owners of animals as in the interest of the general public. *Railroad v. Crider*, 91 Tenn., 507, 19 S. W., 618. But it does not follow from these considerations that a railroad company may not enter into contracts with others, and particularly adjacent landowners, for the erection and maintenance and keeping in repair of fences inclosing its tracks, as the

duty of doing so is not an absolute one, but one which, if it fails to perform, only makes it liable to the owner for damages to live stock killed or for damages to live stock injured. Of necessity the performance of the duty imposed by law upon railroad companies of building and maintaining fences must be accomplished through means of some agency, and it is entirely proper and lawful for the railroad company to accomplish this end by means of a contract with the landowner himself. There can be no legal objection to the landowner contracting to release the railroad from liability for damages as the result or consequence of his failure to comply with his part of the contract.

The question under consideration was suggested by this court in the case of *Railroad* v. *Webster*, 106 Tenn., 586, 61 S. W., 1018. The contract in that case was very similar in its terms to the one involved here. There, as here, the contract undertook to make the obligations run with the land, and in that case suit was brought by a purchaser of the land over the original contract. It was there held that such a contract does not run with the land, but that it was a mere personal obligation of the particular land owner, not binding on the subsequent purchaser. It was not necessary in that case to decide the question here presented, but it was suggested in the opinion "whether the original owner might not have been bound by its contract by way of an estoppel." In respect to which the court said: "We need express no opinion."

We are of the opinion that the plaintiff in this case, being the owner of the land and one of the contracting parties, the contract being both legal and binding, cannot be permitted to recover for the value of his stock which

was killed as a result of his own failure to carry out his contract with the railroad company. He contracted to keep this fence in repair if the railroad company, upon his notice, furnished the materials necessary for that purpose. He gave no notice to the railroad company of the appearance or existence of defects in the fence. It became defective, as a result of which his animal escaped upon the railroad track. His breach of the contract alone must be considered as the cause of his misfortune. He cannot be heard in equity and good conscience to compel the railroad company to respond in damages resulting alone from his failure to perform a legal and binding contract which he entered into with the railroad company, which, if he had done, no claim in his favor could have arisen. This view is not only sustained upon the principles of estoppel, and for the reasons hereinbefore given, but by authority.

In 33 Cyc. 1173, it is said: "The construction of fences and cattle guards, although required by statute, may be waived by an adjoining landowner, or he may agree with the company that he will himself construct and maintain them, and in such cases cannot maintain any action against the railroad company for injuries to animals due to the absence of such fences or cattle guards; but agreements of this character are not binding upon persons not parties to the contract or assenting thereto, although it has been held that a tenant of the landowner will be bound thereby. A covenant in a deed of right of way by which the landowner agrees to maintain the necessary fences runs with the land and estops all persons holding through or under him from maintaining such actions to the same extent as the grantor himself; but a mere parol agreement does not run with the land or bind a subsequent owner, nor do covenants in

a deed with regard to the maintenance of fences bind persons who are strangers thereto."

The cases cited which sustain the text are: *Terre Haute, etc., R. Co. v. Smith,* 16 Ind. 102 (distinguishing *New Albany, etc., R. Co. v. Maiden,* 12 Ind., 10) ; *Warren* v. *K. & D. M. R. Co.,* 41 Iowa, 484; *Ells* v. *Pacific R. Co.,* 48 Mo., 231; *Talmadge* v. *Rensselaer, etc., R. Co.,* 13 Barb. (N. Y.), 493; *Illinois Cent. R. Co.* v. *Swearingen,* 33 Ill., 289; *Enright* v. *San Francisco, etc., R. Co.,* 33 Cal., 230; *Terre Haute, etc., R. Co. v. Smith,* 16 Ind., 102; *Whittier* v. *Chicago, etc., R. Co.,* 24 Minn., 394; *Ells* v. *Pacific R. Co.,* 48 Mo., 231; *Talmadge* v. *Rensselaer, etc., R. Co.,* 13 Barb. (N. Y.), 493; *Indianapolis, etc., R. Co.* v. *Petty,* 25 Ind., 413; *Clayton* v. *Great Western R. Co.,* 23 U. C. C. P. ,137; *Kilmer* v. *Great Western R. Co.,* 35 U. C. Q. B., 595; *Duffy* v. *New York, etc., R. Co.,* 2 Hilt. (N. Y.), 496.

It results, therefore, that under the facts found by the trial judge in this case the plaintiff was not entitled to recover; but, as the railroad company is not complaining of the action of the court of civil appeals in remanding the case, the petition of the plaintiff for *certiorari* will be denied.